IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

PETER N. NGATIA,            *

     Plaintiff,            *

       v.            *            CIVIL NO.: WDQ-14-0899

DEPARTMENT OF PUBLIC            *
SAFETY & CORRECTIONAL SERVICES, *
et al.,            *

     Defendants.            *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

MEMORANDUM OPINION

Peter N. Ngatia, *pro se*, sued the Department of Public
Safety and Correctional services, the Jessup Correctional
Institution (collectively, "the State Defendants), and the
American Federation of State, County and Municipal Employees
("AFSCME")[1] for discrimination, in violation of Title VII of the
Civil Rights Act of 1964 ("Title VII"),[2] and other claims.
Pending are AFSCME's motion to dismiss, the Plaintiff's motion
to amend the complaint, and the State Defendants' motion to
dismiss, or, in the alternative, for summary judgment.  No
hearing is necessary. *See* Local Rule 105.6 (D. Md. 2011).  For
the following reasons, the motion to dismiss and the motion for

---

[1] AFSCME was the union that represented the Plaintiff through his
disciplinary process.

[2] 42 U.S.C. §§ 2000e, *et seq.*

summary judgment will be granted; the Plaintiff's motion to amend will be denied.

I.  Background[3]

The Plaintiff is a naturalized American citizen from Kenya. ECF No. 17 at 3.  On December 6, 2010, the Plaintiff began working for the Maryland Department of Public Safety and Correctional Services ("DPSCS") as a corrections officer ("CO"). *Id.*  In 2011, the Plaintiff was assigned to the Jessup Correctional Institution ("JCI").[4]  *Id.*

---

[3] The facts are taken from the complaint, ECF No. 1; the first amended complaint, ECF No. 17; the proposed second amended complaint complaint, ECF No. 39; the State Defendants' motion, ECF No. 31; the Plaintiff's opposition, ECF No. 38; and their supporting exhibits.

On a motion to dismiss, the well-pled allegations in the complaint are accepted as true.  *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).  The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed.  *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

In reviewing a motion for summary judgment, the nonmovant's evidence "is to be believed, and all justifiable inferences are to be drawn in [her] favor."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

[4] The Plaintiff is currently assigned to the Maryland Correctional Institution for Women.  ECF No. 17 at 3.

A. September 19, 2011 Incident[5]

JCI contains six housing units (A through F).  ECF No. 31-3 (Investigation Report) at 21.  Housing Unit F has four tiers or "wings" (labeled A through D) which form an "X" with the control center and lobby in the middle.  ECF No. 17 at 4.  There is one CO assigned to each tier, a CO in the control center, and an officer in charge.  *See id.*

On September 19, 2011, the Plaintiff was assigned to Tier A of the F Housing Unit.  *Id.*  Gregory Okeke was assigned to the B-wing; Boniface Karani was assigned to the C-wing; Olanyiyi Ojo[6] was assigned to the D-wing; and Tomeka Hollis[7] was assigned to the control center.  ECF No. 17 at 4; ECF No. 31-3 at 17-18.  Sergeant Alonzo Owens[8] was the officer in charge.  *Id.*

---

[5] The Plaintiff's account of the September 19, 2011 incident differs greatly from the State Defendants' version of events. The Court has attempted to present only the uncontested facts; the parties differ in how they interpret the conclusions to be drawn from these facts.

[6] Other than identifying the Plaintiff as having Kenyan national origin, the Plaintiff and the State Defendants refer to non-American born COs as "African."  Okeke, Karani, and Ojo are male and African born.  *See* ECF 39-1 at 12.

[7] Hollis is an African-American female.  *See* ECF 39-1 at 11-12.

[8] Owens is an African-American male.  *See* ECF 39-1 at 11-12.

3

At about 9:00 pm, inmate Jawon Ferguson attacked Sergeant
Owens at the entrance of the D-wing.  ECF No. 31-5 (COBR Hearing
Transcript) at 48:20-54:3.  The attack moved into the housing
unit lobby where Ferguson grabbed a broom and began striking
Sergeant Owens with it.  *Id.*  Several minutes after the fight
began, the Plaintiff ran into the lobby.[9]  *See* ECF No. 17 at 8-
10.

When the Plaintiff entered the lobby, he did not join the
fight, issue commands, or secure dropped pepper spray or other
possible weapons that were on the ground.  *See* ECF No. 31-5 at
54:4-57:25.  There was another inmate, Clinton Bradley, in the
area.  *Id.*  The Plaintiff did not attempt to restrain Bradley
when he entered the lobby.  *Id.*  "None of the officers assigned
to the F Housing Unit gained control of the situation, or
subdued any of the inmates."  *Id.* at 46:8-10.

---

[9] In the complaint, the Plaintiff asserts that he came to the
lobby after hearing sounds of a fight and hearing Ojo shout.
ECF No. 17 at 9-10.  In his initial report, the Plaintiff stated
that he received an officer in need of assistance call from
Hollis in the control center.  *See* ECF No. 31-3 at 10-14.
During his interrogation, the Plaintiff said that he was wrong
in his report and he ran to the lobby because he heard sounds of
distress.  *Id.* at 14.  The Plaintiff told the investigator, "The
actions I performed on that day are different from what I
actually transcribed on the matter of record."  *Id.* at 14.

4

CO Francis Fruh[10] ran into the F Housing Unit from another housing unit. *Id.* at 46:14-18; 57:1-58:58. Fruh immediately attempted to assist Sergeant Owens. *Id.* However, Bradley stepped forward and struck Fruh on the head.[11] *Id.* Fruh turned and struck Bradley who fell to the floor. *Id.*

Other "officers assigned to the E Housing Unit and to [the] JCI compound" entered the F Housing Unit, including Marcus Bazemore, Martin Simon-Ebughu, Adetokinbo Ayai, and Ayonkunle Ayodele.[12] ECF No. 31-2 at ¶ 12; ECF No. 31-5 at 46:14-18, 58:12-59:9. Bazemore grabbed Ferguson "around the waist and took him to the ground." ECF No. 31-5 at 58:25-59:12. Bazemore and the officers from outside the F Housing Unit then detained Ferguson. *Id.*

B. Investigation and Disciplinary Action

On September 23, 2011, an administrative committee including Assistant Warden Cherie Peay, Allen Gang, and Captain Gary Forman reviewed the video of the September 19th incident to determine if the use of force by the officers was proper. ECF

---

[10] CO Fruh is identified as an "African" male. ECF No. 31-2 (Wolfe Aff.) at ¶ 12.

[11] Some time after this, Bradley approached the Plaintiff who used pepper spray on Bradley. *See* ECF No. 31-5 at 55:22-56:20.

[12] Simon-Ebughu, Ayai, and Ayodele are identified as "non-American born," "African" males. ECF No. 31-2 at ¶ 12.

NO. 31-3 at 1.  "[I]t was determined that the level of force may

[have] be[en] justified but disciplinary action [was to be]

taken against [] staff for the lack of response in an

emergency."  *Id*.

On October 4, 2011, JCI's Investigative Supervisor, Captain

Shalawnda Suggs, began an investigation of the incident.  ECF

No. 31-3 at 1.  During her investigation, Captain Suggs read all

of the written reports of the incident, "interrogated" all the

officers involved, reviewed the video, and gathered 24 exhibits.

*See id*. at 2-27.  Captain Suggs interviewed the Plaintiff twice.

*See id*. at 5-14.  On both occasions, the Plaintiff was

represented by AFSCME counsel.  *Id*.

At the completion of her investigation, Captain Suggs

determined:

> After reviewing the video footage, recorded and
> written statements[,] Officer Ngatia's statement is
> not consistent.  It is determined that he has
> intentionally provided misleading information.  His
> verbal and written statements contradict the video
> footage.  Officer Ngatia confirms that some of the
> facts submitted in his written report were false.  He
> admits that he never overheard a radio transmission
> indicating an officer in need of assistance as stated
> in his Matter of Record and Use of Force documentation
> submitted on September 19, 2011.  His lack of
> recalling events such as post orders and matter of
> records after provided the opportunity to review his
> written reports is questionable.  His vague responses
> are also questionable.  Therefore, it is determined

> that Officer Peter Ngatia['s] statements are not
> credible.
>
> Had Officer Ngatia applied [the] mechanical
> restraints that he [was] issued at the beginning of
> his tour of duty[] on inmate Clinton Bradley after
> gaining knowledge of a physical attack [on] Sergeant
> Owens, inmate Bradley would not have been able to
> strike Officer Francis Fruh upon his entrance to the
> Housing Unit to assist.  He confirms that he was aware
> of potential danger and believed something was wrong
> in the lobby after hearing yelling and shouting coming
> from the lobby area.  However, he failed to utilize
> his radio to notify a supervisor or call for
> assistance.  He confirmed that his radio was
> operational when he requested [O]fficer Hollis to open
> the front door [to Wing A] and she immediately
> responded.  Had he taken action, he could have
> prevented the assault of Officer Fruh . . . .

ECF No. 31-3 at 22-23 ("Findings."). Captain Suggs determined

that all the F Housing Unit's wing officers responded

inappropriately to the September 19th emergency. ECF No. 31-7

at 1.  However, she found that Sergeant Owens and control center

officer Hollis were not at fault.  *Id.*

On December 16, 2011, Captain Suggs sent her investigative

report to JCI Warden John Wolfe.  ECF No. 31-2 at ¶ 3.  That

day, Wolfe issued a Notice of Disciplinary Charges against the

Plaintiff.  *Id.* at ¶ 5.  The notice contained eight charges and

recommended termination.  *See* ECF No. 31-4.  The Plaintiff filed

an appeal of disciplinary charges and requested a hearing

pursuant to the Correctional Officer's Bill of Rights ("COBR").

ECF No. 31-2 at ¶ 5.

7

On July 12 and 13, 2012, the COBR Hearing Board--composed of three independent corrections officers--heard evidence from the State Defendants and the Plaintiff about the September 19th incident. *See* ECF No. 31-5 (Hearing Transcript).  The Plaintiff was represented by AFSCME counsel. *Id*. at 6:2-6.  When the video of the incident was played, the Plaintiff's counsel did not object. *Id*. at 46:22-25.  During his opening statement, counsel urged the Board to look at the video and stated that there would be "no better testimony than the video . . . ." *Id*. at 28:18-20.

After the State Defendants had the opportunity to present their case, the Plaintiff was allowed to respond.  The Plaintiff gave his version of events. *See* ECF No. 31-6 at 13.  Captain Martine Ice testified on the Plaintiff's behalf. *Id*. at 12.  Captain Ice stated that the Plaintiff's response to the incident was "acceptable" although it "could have been better." *Id*.  He attributed the Plaintiff's mistakes to his inexperience. *Id*.

At the end of the hearing, the Board determined that the Plaintiff was guilty of three of the eight charges: improper performance of a duty, insubordination, and breach of security. ECF No. 81-5 at 258:10-259:25.  After hearing testimony on

punishment, the Board recommended that the Plaintiff be suspended for 14 days without pay.  *Id.* at 283:18-23.

On August 14, 2012, before the Board had issued its written findings, Warden Wolfe issued a final disciplinary order suspending the Plaintiff for 14 days without pay beginning on August 16, 2012.  ECF No. 31-7.  On October 15, 2012, the Board issued its written decision.  ECF No. 15-1 at 2.  On October 23, 2012, Wolfe issued a second final disciplinary order.  ECF No. 31-8.  Wolfe asserts that he was merely confirming the prior order and was not imposing a new 14 day suspension.  ECF No. 31-2 at ¶ 8.  However, the Plaintiff and AFSCME counsel believed that the order was for a new suspension.  *See* ECF No. 15-1 at 2-3.  AFSCME, on behalf of the Plaintiff, petitioned the Circuit Court for Anne Arundel County for judicial review of the disciplinary order in accordance with the COBR.[13]  *See* ECF No. 15-1 at 3.

On September 24, 2012, the Plaintiff filed a Charge of Discrimination with the EEOC against JCI.  *See* ECF No. 17 at 2-3; ECF No. 31-12.  The Plaintiff alleged that he was punished

---

[13] On appeal, the Plaintiff wanted AFSCME counsel to argue that the State Defendants had altered the evidence, and that the Plaintiff did not commit the infractions for which he was punished.  *See* ECF No. 34-3 (email with counsel) at 1.  Counsel refused to adopt this approach, and suggested a procedural appeal.  *Id.*

9

although Sergeant Owens and Hollis were not punished, because of his race and national origin.  ECF No. 31-12.  On April 23, 2013, the Circuit Court for Anne Arundel County found that Wolfe's order violated the COBR, rescinded the suspension, and awarded the Plaintiff full back pay.  ECF No. 15-4.

On May 31, 2013, the Plaintiff sent a letter to the Cleveland Field Office of the EEOC.  ECF No. 28-5 at 3.  The Plaintiff asserted that AFSCME had discriminated against him by not challenging the evidence substantively on appeal, and was working with JCI to conceal altered evidence.  *Id.* at 4.  The Plaintiff stated that he "wish[ed] [to] extend [his] charges to incorporate AFSCME for discriminat[ion] . . . ."  *Id.*  The Plaintiff ended the letter by stating, "Kindly send me an updated charge so that I [can] endorse it; if you consider the information sufficient enough."  *Id.*  The Plaintiff never received an updated charge; nor, is there any evidence that the EEOC ever received the letter.  *See* ECF No. 21 at 2.

On December 25, 2013, the EEOC sent the Plaintiff a right to sue letter.  ECF No. 31-13.  The letter only discussed the

Plaintiff's claims against the State Defendants and did not
mention AFSCME.  *See id.*[14]

C. Procedural History

On March 31, 2014, the Plaintiff sued the State Defendants
and AFSCME for race, sex, and national origin discrimination and
retaliation.  ECF No. 1.  He also asserted that the
investigation violated due process.  *Id.*  The Plaintiff's claims
were based on his arguments that Sergeant Owens and CO Hollis
committed multiple infractions during the September 19, 2011
incident, but were not punished.  *See, e.g.*, *id.* at 5-6.  The
Plaintiff alleged that the State Defendants had altered the
video of the incident to protect Hollis, and that AFSCME was
working with the State Defendants to conceal this fact.[15]  *See
id.* at 16-17.

On July 17, 2014, AFSCME moved to dismiss the complaint.
ECF No. 15.  On July 18, 2014, the Plaintiff filed a
"Supplemental to the Complaint" in which he restated his
previous charges and added a claim for race discrimination under

---

[14] The Plaintiff has presented no evidence that he contacted the
EEOC about the AFSCME omission, or attempted to amend his
charge.

[15] The Plaintiff does not allege who altered the video or what
alterations were made.

the Civil Rights Act of 1991.[16]   ECF No. 17.   All the Defendants have treated this "supplemental" as an amended complaint, and the Plaintiff has not objected.

On July 24, 2014, the Plaintiff filed a "motion to suppress."[17]   ECF No. 19.   The court clerk correctly docketed the motion to suppress as the Plaintiff's response in opposition to AFSCME's motion to dismiss.   On July 31, 2014, the Plaintiff filed a "Reconsideration Motion to Suppress."   ECF No. 21.   The Plaintiff was attempting to supplement his prior response in opposition; however, the clerk docketed the filing as a separate motion.[18]

On August 8, 2014, AFSCME moved to dismiss the amended complaint.   ECF No. 22.   On August 13, 2014, the Plaintiff filed another motion to suppress as his response.[19]   ECF No. 26.   Also on August 13, 2014, AFSCME learned that it had not properly served the Plaintiff with its motion to dismiss the amended complaint.   *See* ECF No. 28-1.   On August 15, 2014, AFSCME

---

[16] 42 U.S.C. § 1981.

[17] The Plaintiff files his responses as "motions to suppress."

[18] Accordingly, the Court will deny the motion to suppress and will consider ECF No. 21 as a supplement to ECF No. 19.

[19] The Court will deny that motion to suppress and consider ECF No. 26 the Plaintiff's response in opposition.

refiled its motion to dismiss and properly served the Plaintiff.[20]   ECF No. 28.   On August 22, 2014, the State Defendants moved to dismiss the amended complaint or, in the alternative, for summary judgment.   ECF No. 31.

On August 25, 2014, the Plaintiff filed two documents with the Court: a response to AFSCME's motion to dismiss and a motion to suppress AFSCME's motion to dismiss.   ECF Nos. 33, 34. Although the motion to suppress was docketed as a separate motion, it was actually the Plaintiff's response in opposition.[21] On September 11, 2014, AFSCME replied.   ECF No. 37.

On September 19, 2014, the Plaintiff opposed the State Defendants' motion.   ECF No. 38.   On September 26, 2014, the Plaintiff filed a motion "for leave to state a claim."   ECF No. 39.   On October 2, 2014, the State Defendants filed their reply. ECF No. 40.

---

[20] Although AFSCME informed the clerk that it was refiling its motion to dismiss, both ECF No. 22 and ECF No. 28 remained active motions on the docket.   The Court will strike ECF No. 22 and will consider ECF No. 28 and its responses.

[21] In the motion to suppress and not the "response," the Plaintiff addresses AFSCME's arguments about dismissal.   *See* ECF No. 34.   Accordingly, the Court will deny the motion to suppress and consider ECF No. 33 and ECF No. 34 as the Plaintiff's response in opposition.

II. Analysis

A. Legal Standards

1. Amending a Complaint

Fed. R. Civ. P. 15(a)(1) allows a party to "amend its pleading once as a matter of course" within "21 days after serving it" or, "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  All other amendments may be made "only with the opposing party's written consent or the court's leave."  Rule 15(a)(2).

Federal Rule of Civil Procedure 15(a)(2) instructs that leave to amend should be freely given when justice requires. Leave should be denied only when amendment would unduly prejudice the opposing party, amount to futility, or reward the movant's bad faith.  *Steinburg v. Chesterfield Cnty. Planning Comm'n*, 527 F.3d 377, 390 (4th Cir. 2008); *Equal Rights Ctr. v. Niles Bolton Associates*, 602 F.3d 597, 603 (4th Cir. 2010).

2. Lack of Subject Matter Jurisdiction

The plaintiff bears the burden of proving subject matter jurisdiction.  *Piney Run Pres. Ass'n v. Cnty. Comm'rs of Carroll Cnty.*, 523 F.3d 453, 459 (4th Cir. 2008).  When considering a

14

motion to dismiss for lack of subject matter jurisdiction, "the district court may regard the pleadings as mere evidence on the issue and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Velasco v. Government of Indonesia*, 370 F.3d 392, 398 (4th Cir.2004). However, courts "should apply the standard applicable to a motion for summary judgment, under which the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir.1991).

3. Failure to State a Claim

Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed for failure to state a claim upon which relief can be granted. Rule 12(b)(6) tests the legal sufficiency of a complaint, but does not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

The Court bears in mind that Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Migdal v. Rowe Price-Fleming Int'l Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001). Although Rule 8's

notice-pleading requirements are "not onerous," the plaintiff must allege facts that support each element of the claim advanced. *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 764-65 (4th Cir. 2003). These facts must be sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

4. Motion for Summary Judgment

The State Defendants' motion is captioned as a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion

16

with this caption implicates the Court's discretion under Rule
12(d) of the Federal Rules of Civil Procedure.  *See Kensington
Vol. Fire Dept., Inc. v. Montgomery County*, 788 F. Supp. 2d 431,
436-37 (D. Md. 2011).

Ordinarily, a court "is not to consider matters outside the
pleadings or resolve factual disputes when ruling on a motion to
dismiss." *Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir.
2007).  However, under Rule 12(d), a court, in its discretion,
may consider matters outside the pleadings; if the court does
so, "the motion must be treated as one for summary judgment
under Rule 56," and "[a]ll parties must be given a reasonable
opportunity to present all the material that is pertinent to the
motion."  Fed. R. Civ. P. 12(d).[22]  When the movant alternatively
captions its motion as one for summary judgment, the parties are
deemed to be on notice that conversion under Rule 12(d) may

---

[22] A district judge has "complete discretion to determine whether
or not to accept the submission of any material beyond the
pleadings that is offered in conjunction with a Rule 12(b)(6)
motion and rely on it, thereby converting the motion, or to
reject it or simply not consider it." 5 C Wright & Miller,
Federal Practice and Procedure § 1366, at 159 (3d ed. 2004, 2011
Supp.).  This discretion "should be exercised with great caution
and attention to the parties' procedural rights." *Id.* at 149.
In general, courts are guided by whether consideration of
extraneous material "is likely to facilitate the disposition of
the action," and "whether discovery prior to the utilization of
the summary judgment procedure" is necessary.  *Id.* at 165-67.

occur; the Court "does not have an obligation to notify parties of the obvious." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998).

In accordance with *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), the Plaintiff was informed of his right to file a response to the motion, and the opportunity to submit affidavits, declarations, and other documentary evidence. *See* ECF No. 35. As noted, the Plaintiff responded to the motion, and attached documentary evidence. ECF No. 38.[23]

Ordinarily, summary judgment is inappropriate when "the parties have not had an opportunity for reasonable discovery." *E.I. de Nemours and Co. v. Kolon Industries, Inc.*, 637 F.3d 435, 448 (4th Cir. 2011). However, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party has made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir.2002) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir.1996)).

---

[23] The Plaintiff captioned his response as "Plaintiff's [] Response to Defendants' [] Motion to Dismiss, or For Summary Judgment." ECF No. 38 at 1. Through his captioning, and the filing of evidence, the Plaintiff demonstrated that he "had actual notice that the motion could be disposed of as one for summary judgment." *Laughlin*, 149 F.3d at 261.

Generally, to raise adequately the issue that discovery is needed, the party opposing the motion must file an affidavit or declaration pursuant to Rule 56(d) (formerly Rule 56(f)), explaining why, "for specified reasons, it cannot present facts essential to justify its opposition" without needed discovery. Fed. R. Civ. P. 56(d); *see Harrods*, 302 F.3d at 244-45 (discussing affidavit requirement of former Rule 56(f)).  The Plaintiff has not filed a Rule 56(d) affidavit.  It is therefore appropriate to address the Defendants' motion as one for summary judgment.

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a);[24] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  However, the opposing party must produce

---

[24] Rule 56(a), which "carries forward the summary[]judgment standard expressed in former subdivision (c)," changed "genuine 'issue' [to] genuine 'dispute,'" and restored the word "'shall' . . . to express the direction to grant summary judgment."  Fed. R. Civ. P. 56 advisory committee's note.

evidence upon which a reasonable fact finder could rely.
*Celotex Corp.*, 477 U.S. at 322-23.  The mere existence of a
"scintilla" of evidence is insufficient to preclude summary
judgment.  *Anderson*, 477 U.S. at 252.

B. The Plaintiff's Motion to Amend

The Plaintiff's proposed second amended complaint contains
new claims for hostile work environment and retaliation under §
1981.  *See* ECF No. 39-1 at 1.  There are no new factual
assertions.  *Id.*  The main change from the first amended
complaint is in organization.  *See id.*

Although leave to amend should be freely given when justice
requires, for the reasons discussed *infra* the Plaintiff's
amended complaint would be futile.  Accordingly, the Court will
deny the motion.  *See Steinburg*, 527 F.3d at 390.

C. Failure to Exhaust Administrative Remedies

A Title VII plaintiff must first "exhaust [his] administ-
rative remedies by bringing a charge with the EEOC."  *Smith v.
First Union Nat'l Bank*, 202 F.3d 234, 247 (4th Cir.2000).  "The
scope of the plaintiff's right to file a federal lawsuit is
determined by the charge's contents."  *Jones v. Calvert Grp.,
Ltd.*, 551 F.3d 297, 300 (4th Cir.2009).  "Only those
discrimination claims stated in the initial charge, those

reasonably related to the original complaint, and those
developed by reasonable investigation of the original complaint
may be maintained in a subsequent Title VII lawsuit."
*Id.* (internal quotation marks omitted).  "[A] failure by the
plaintiff to exhaust administrative remedies . . . deprives the
federal courts of subject matter jurisdiction over the claim."
*Id.*

AFSCME argues that the Court must dismiss all claims
against the union because the Plaintiff failed to exhaust his
administrative remedies.  ECF No. 28-2 at 3.  The Plaintiff
cites his May 31, 2013 letter to the EEOC to show that he
exhausted his administrative remedies.  ECF No. 28-5 at 3.

Although the Plaintiff sent a letter to the EEOC, he has
not shown that the letter was ever received.  Further, the
letter stated that the EEOC was to send him "an updated charge
so that [he] [could] endorse it; if [the EEOC] consider[ed] the
information sufficient enough."  *Id.*  The Plaintiff never
received an updated charge; the right to sue letter from the
EEOC only discussed the claims against the State Defendants; and
the Plaintiff offers no evidence other than the May 31, 2013
letter that he amended his original complaint.  *See* ECF No. 21
at 2; ECF No. 31-13.  Because AFSCME had no notice of the

21

Plaintiff's claims, the Plaintiff has failed to exhaust his administrative remedies. *See Chacko v. Patuxent Inst.*, 429 F.3d 505, 510 (4th Cir.2005). Accordingly, the Court lacks subject matter jurisdiction over the Plaintiff's Title VII claims against AFSCME, and those claims will be dismissed.[25]

The State Defendants argue that the Plaintiff's sex discrimination claim must be dismissed because his EEOC charge was only for race and national origin discrimination. ECF No. 31 at 18. The Plaintiff's sex discrimination claim is "reasonably related" to his EEOC complaint. In the EEOC complaint, the Plaintiff discusses CO Hollis and states that she was treated differently from him. ECF No. 31-12. Further, the sex discrimination claim arises out of the same set of facts as the race and national origin discrimination claims.

However, the Court does not have subject matter jurisdiction over the Plaintiff's Title VII retaliation claim. The Plaintiff claims that he was retaliated against because of

---

[25] Section 1981 does not have an administrative exhaustion requirement. *See Qualls v. Giant Food, Inc.*, 187 F. Supp. 2d 530, 533 (D. Md. 2002). Therefore, the Court has subject matter jurisdiction over the Plaintiff's race discrimination claim under § 1981. However, because the complaint states that other black individuals were not punished and were used by the Plaintiff as comparators, the complaint fails to state a claim for racial discrimination. This will be discussed in more detail *infra* when the Court addresses the State Defendants' motion for summary judgment.

his assertions that the State Defendants fabricated evidence. *See* ECF No. 17.  Although this claim grew from the September 19, 2011 incident it is based on independent and specific facts not contained in the EEOC charge, and the Plaintiff did not check the "retaliation" box on his charge.  *See* ECF No. 31-12. Therefore, the Court lacks subject matter jurisdiction.  *See Jones v. Calvert Grp, Ltd.*, 551 F.3d 297, 301 (4th Cir. 2009) ("Indeed, she checked only the 'retaliation' box on her EEOC charge . . .   The district court therefore properly determined that Jones failed to exhaust her administrative remedies . . . ."); *Sewell v. Strayer Univ.*, 956 F. Supp. 2d 658, 668-69 (D. Md. 2013) (checked only "retaliation" box); *Cohens v. Md. Dept. of Human Res.*, 933 F. Supp. 2d 735, 743 (D. Md. 2013) (failure to check "retaliation" box).

  D. The Plaintiff's Employment Discrimination Claims

    1. Methods of Proving Discrimination

    A plaintiff can prove his employer's discrimination through one of two methods.  *See Hill v. Lockheed Martin Logistics Mgmt., Inc.*, 354 F.3d 277, 284 (4th Cir. 2004).  These methods apply equally to substantive discrimination claims and Title VII retaliation claims.  *See Kapel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir. 1998).

First, a plaintiff may use "any direct or indirect evidence relevant to and sufficiently probative of the issue," under "ordinary principles of proof." *Burns v. AAF-McQuay, Inc.*, 96 F.3d 728, 731 (4th Cir. 1996) (internal quotation marks omitted). The plaintiff must produce "direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material fact." *Rhoads v. FDIC*, 257 F.3d 373, 391 (4th Cir. 2001) (alteration in original) (internal quotation marks omitted).

Absent direct evidence of discrimination, the Court applies the burden-shifting approach of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, the plaintiff must first establish a *prima facie* case of discrimination. *Merritt v. Old Dominion Freight Line, Inc.*, 601 F.3d 289, 294 (4th Cir. 2010). If he does, "a presumption of illegal discrimination" arises, and the burden of production shifts to the employer to articulate a nondiscriminatory reason for its adverse decision. *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 336 (4th Cir. 2011).

"If the defendant carries this burden of production, the
presumption raised by the *prima facie* case is rebutted," *Tex.
Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 (1981), and
the *McDonnell Douglas* framework "drops out of the picture." *St.
Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 511 (1993).  The
plaintiff must then prove by a preponderance of the evidence
that "the proffered reason was not the true reason for the
employment decision," and that the true reason was
discrimination.  *Burdine*, 450 U.S. at 256.  He may do this
directly or indirectly, by "persuading the court that a
discriminatory reason more likely motivated the employer" or by
showing that the employer's explanation is "unworthy of
credence." *Id.*

   2. AFSCME's Motion to Dismiss the § 1981 Race Discrimination
      Claim

The Plaintiff alleges in the complaint that AFSCME
discriminated against the Plaintiff be refusing to argue that
the video was tampered with and by pursuing a *successful*
procedural appeal rather than arguing the Plaintiff's
substantive innocence.  ECF No. 17 at 6-8.  The Plaintiff offers
no facts to support his conclusion that AFSCME knew of, and was
attempting to cover up the State Defendants' evidence tampering.
He only offers his belief that there was a conspiracy.

25

A labor organization may incur liability under § 1981 if it "instigated or actively supported the discriminatory acts [of an employer]." *Anjelino v. New York Times Co.*, 200 F.3d 73, 95 (3d Cir. 1999). There are no facts in the complaint that can plausibly support such a claim. Accordingly, the Court will grant AFSCME's motion.

3. The § 1981 Retaliation Claim[26]

To establish a *prima facie* case of retaliation, the Plaintiff must show 1) that he engaged in a protected activity; 2) his employer took an adverse employment action against him; and 3) there was a causal link between the protected activity and adverse action. *Navy Fed. Credit Union,* 424 F.3d at 406. There are two categories of protected activity -- opposition and participation. *Laughlin v. Metro. Wash. Airports Auth.,* 149 F.3d 253, 259 (4th Cir. 1998). Participation includes "making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing." *Betof v. Suburban Hosp.*, No. DKC-11-1452, 2012 WL 2564781, at *10 (D. Md. June 29, 2012). Opposition is a much broader category and includes

---

[26] Because no evidence outside the complaint was used in analyzing this claim, the Court will address AFSCME's motion to dismiss and the State Defendants' motion for summary judgment together.

"staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities,"[27] or "complain[ing] to [] superiors about suspected violations . . . ."[28]

The Plaintiff argues that he was retaliated against because he stood up to the State Defendants and argued that they had falsified evidence.  However, this is not a protected activity. Further, charges were referred against the Plaintiff before he made these allegations.[29]  There is nothing to support this charge.  Accordingly the Court will grant AFSCME's motion to dismiss and the State Defendants' motion for summary judgment.

　　4. Summary Judgment on the Substantive Discrimination Claims

The Plaintiff asserts that he was discriminated against because of his race, sex, and national origin.  *See* ECF No. 17. Although each of these claims is distinct, they fail for the same reason.  Assuming, for the sake of argument, that the Plaintiff has established a *prima facie* case of discrimination,

---

[27] *Laughlin,* 149 F.3d at 259.

[28] *Bryant v. Aiken Reg'l Med. Ctrs., Inc.,* 333 F.3d 536, 543-44 (4th Cir. 2003).

[29] The first instance on the record in which the Plaintiff asserts that evidence was fabricated was his letter to his AFSCME appellate counsel.  *See* ECF No. 34-3.

the State Defendants have offered a non-discriminatory reason
for his suspension--his conduct during the September 19, 2011
incident.  The Plaintiff has failed to cite any evidence that
this reason is pretextual.

The only evidence of discrimination alleged in the
complaint (or any of the Plaintiff's responses) is disparate
treatment.  *See* ECF No. 17 at 17-32.  However, the individuals
the Plaintiff offers as comparators are also members of the
protected classes to which he belongs.  *See Allen v. Dorchester
Cnty.*, No. ELH-11-01936, 2013 WL 5442415, at *15 (D. Md. Sept.
30, 2013) ("If plaintiff's comparators are from the same
protected class, then any discrepancy in discipline is not
attributable to plaintiff's membership in that class.").

CO Harris, Sergeant Owens, CO Fruh, and other officers who
reported to the scene and were not punished were all black.
Four of the officers who responded to the scene, including CO
Fruh, are identified as "African" and were not born in the
United States; these individuals were not punished and were
cleared of any misconduct.  Finally, the Plaintiff argues that
he was discriminated against because of his sex because CO
Hollis was treated differently; however, every other officer
involved was male, and most received no discipline.  The

Plaintiff cannot sustain a substantive discrimination claim.
*See Booth v. Maryland,* 327 F.3d 377, 383 (4th Cir.2003) ("[It
is] not possible to infer that any disparate discipline against
Booth was motivated by racial discrimination because Booth's
evidence demonstrated that both white and African-American
employees were treated differently than Booth") (quotation marks
and citation omitted).[30]

"[A] plaintiff's prima facie case, combined with sufficient
evidence to find that the employer's asserted justification is
false, may permit the trier of fact to conclude that the
employer unlawfully discriminated." *Reeves v. Sanderson
Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000).  However, the
plaintiff's "own assertions of discrimination" are not
sufficient.  *Adam v. Trs. of Univ. of N.C.-Wilmington,* 640 F.3d
550, 560 (4th Cir. 2011).  Here, the Plaintiff's central
argument is that he was punished while other officers who *he*

---

[30] *See also Delos Santos v. Potter,* 371 F. App'x 746, 748 (9th
Cir.2010) (denying disparate treatment claim under ADEA and
Title VII because comparators were members of the same protected
class as plaintiff); *Jordan v. City of Gary, Ind.,* 396 F.3d 825,
833 (7th Cir.2005) ("[B]ecause [comparator] is a member of the
same protected class as [the plaintiff], [the plaintiff] is
precluded from successfully arguing that she was unfairly
discriminated against . . . ."); *Floyd v. U.S. Dep't of Homeland
Sec.,* No. RDB-09-0735, 2009 WL 3614830, at *8 (D. Md. Oct. 27,
2009) ("A plaintiff cannot establish a claim of disparate
treatment by referencing a comparator of the same protected
class.").

*believes* violated the rules were not.  He asserts without any factual support that evidence was tampered with and offers no explanation about by whom or how this conspiracy was accomplished.  At most the complaint establishes that the State Defendants ran a poor investigation.[31]  This Court does not "sit as a kind of super-personnel department weighing the prudence of [the State Defendants'] decisions."  *DeJarnette v. Corning, Inc.*, 133 F. 3d 293,299 (4th Cir. 1998) (internal quotation marks omitted).  No reasonable jury could conclude that the Plaintiff's race, sex, or national origin was a motivating factor in his discipline.  Accordingly, the Court will grant summary judgment on these claims.

---

[31] *See Bonds v. Leavitt*, 629 F.3d 369, 386 (4th Cir. 2011) ("Even if these investigations were improper or substandard, that does little to help her establish that the reasons given for her termination were not the actual reasons, and it certainly does not give rise to a reasonable inference that her race or gender was the real reason for her termination."); *Countess v. Maryland*, No. ELH-12-02252, 2014 U.S. Dist. LEXIS 5508, at *25 (D. Md. Jan. 16, 2014) ("[T]he employee's mere dissatisfaction with the thoroughness or speed of the employer's investigation does not give rise to liability under Title VII."); *Karpel*, 134 F.3d at 1227-29; *see also Hux v. City of Newport News*, 451 F.3d 311, 315 (4th Cir. 2006) ("Once an employer has provided a non-discriminatory explanation for its decision, the plaintiff cannot seek to expose that rationale as pretextual by focusing on minor discrepancies that do not cast doubt on the explanation's validity, or by raising points that are wholly irrelevant to it.").

D. The Plaintiff's Due Process Claim[32]

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner'" before such deprivation occurs. *Id.* (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).

Here, the Plaintiff received a hearing before an independent board of corrections officers, and he successfully appealed the 14-day suspension to the Circuit Court for Anne Arundel County in full compliance with the COBR. Thus, the Plaintiff had an opportunity to be heard in a meaningful manner.

---

[32] Because the Court only considers the public record of the Circuit Court for Anne Arundel County in analyzing the Plaintiff's Due Process claim, and public records may be considered on a motion to dismiss, the Court will discuss AFSCME's motion to dismiss and the State Defendants' motion for summary judgment together. *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

III. Conclusion

For the reasons stated above, AFSCME's motion to dismiss and the State Defendants' motion for summary judgment will be granted; the Plaintiff's motion to amend will be denied.

_3/4/15_____
Date

_____
William D. Quarles, Jr.
United States District Judge

32